**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| 8FIG, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CASE NO. 1:24-cv-00007 |
| | § | |
| HARDBODY SUPPLEMENTS, LLC | § | |
| D/B/A HARDBODY SUPPLEMENTS | § | |
| LAWRENCE PAYNE, AND PATRICIA | § | |
| PAYNE | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

8fig, Inc. ("8fig") files this its Original Complaint, and in support thereof, would show the Court the following:

**I. PARTIES**

1.      Plaintiff, 8fig, is a Delaware Corporation with its primary place of business located at 1717 W 6th Street, Suite 335, Austin, Texas 78758.

2.      Defendant, Hardbody Supplements, LLC d/b/a Hardbody Supplements ("Hardbody"), is a limited liability company organized under the laws of Kansas with its principal place of business in Kansas. Hardbody may be served with appropriate process through its registered agent, The Hardbody Mission Inc., at 16121 Earnshaw St., Overland Park, Kansas 66221.

3.      Defendant Lawrence Payne is a resident of Kansas and, upon information and belief, one of the primary owners of Hardbody. Lawrence Payne is primarily responsible for the day-to-day operations of Hardbody, including the financial decisions, storefront operations, and relationship with creditors. Lawrence Payne may be served with process at 16121 Earnshaw St.,

Overland Park, Kansas 66221, or wherever he may be found. Further, this Court has jurisdiction over Lawrence Payne due to the tortious conduct he committed which was directed towards and harmed a Texas-based operation.

4.      Defendant Patricia Payne  is a resident of Kansas and, upon information and belief, one of the primary owners of Hardbody. Patricia Payne executed the Agreement at issue in this case and is primarily responsible for the day-to-day operations of Hardbody, including the financial decisions, storefront operations, and relationship with creditors. Patricia Payne may be served with process at 16121 Earnshaw St., Overland Park, Kansas 66221, or wherever she may be found. Further, this Court has jurisdiction over Patricia Payne due to the tortious conduct she committed which was directed towards and harmed a Texas-based operation.

## II. JURISDICTION AND DISCOVERY

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

6.      This Court has venue pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to 8fig's claims occurred in this district, as well as a forum-selection clause chooses this district as the forum for disputes between the parties.

7.      Hardbody, operated by Lawrence Payne and Patrcia Payne (collectively, the "Paynes"), and 8fig agreed to a forum-selection clause selecting the courts of Austin, Texas as the location to litigate all disputes. The forum-selection clause is incorporated into the Master Future Revenue Purchase Agreement, defined below as the "Agreement," in paragraph 24 on page 15 as follows:

> "This Agreement together with any exhibits and addenda, and Purchaser's Service Terms of Use (available at https://www.8fig.co/terms-of-use) and Privacy Policy (available at https://www.8fig.co/privacy-policy), represents the entire

> understanding between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings and agreements with respect to such subject matter."

A true and correct copy of the redacted Agreement is attached hereto and incorporated herein as Exhibit "A." True and correct copies of the Terms of Use and Privacy Policy incorporated into the Agreements are collectively attached hereto and incorporated herein as Exhibit "B."

8.      Further, this Court has jurisdiction over the parties because Hardbody, operated by and at the direction of the Paynes, sells products in Texas using third party companies to sell and ship products to Texas residents through Amazon.com, Inc. and/or Amazon's affiliates (collectively herein, "Amazon") and Shopify (USA) Inc. and/or Shopify's affiliates (collectively herein, "Shopify") as well as other potential partners. At Hardbody's direction and with its knowledge, Amazon and Shopify distribute Hardbody's products to Texas customers and places Hardbody's products into the Texas stream of commerce utilizing Texas-based distribution channels and warehouses. Upon information and belief, Hardbody pays sales taxes to the State of Texas by and through its third-party agents Amazon and Shopify based upon the product volume sold into the state of Texas. Hardbody, therefore, intentionally placed products into the stream of commerce in the State of Texas and realized the benefits of doing business in the State of Texas. Hardbody's Amazon and Shopify Storefronts are marketed to and available for Texas residents and Hardbody realized actual, monetary benefit from operations into Texas.

9.      Additionally, Hardbody currently operates a separate storefront via an unknown payment processor. The present independent storefront is located at hardbodynutritional.com (the "Independent Storefront")

10.      As the co-founder and the Marketing and Branding Specialist of Hardbody, Lawrence Payne directed Hardbody to make its products available to Texas residents and place its

products into the stream of commerce in the State of Texas. Further, in her capacity as the CEO of Hardbody, Patricia Payne directed Hardbody to make its products available to Texas residents and place their products into the stream of commerce in the State of Texas.

11.     Additionally, all of Hardbody's communications to 8fig were made by Lawrence Payne and Patricia Payne to employees in 8fig's Austin, Texas office. Hardbody, Patricia Payne, and Lawrence Payne (collectively, the "Defendants") engaged 8fig's Austin, Texas managed client portal (the "Platform") to request advances, enter into agreements, upload business documents, and engage 8fig in the furtherance of their business relationships. Additionally, the Agreement, discussed in detail below, expressly states Texas law controls, putting Defendants on notice of 8fig's Texas roots and intent to enforce its rights in Texas courts. Under the Agreement, all notices were to be sent to 8fig's office, including any notice of a change in business or e-commerce platform.

12.     For these reasons, Defendants have personally availed themselves to the courts in Travis County, Texas because Defendants have done business within the state of Texas and have sufficient contacts with the forum state.

### III. FACTS

*8fig's Business Model and Technology*

13.     8fig is a technology company that leverages its proprietary systems to assist e-commerce stores selling through Amazon, Shopify, and similar ventures in expanding their business through account purchase transactions. 8fig's technology moves alongside e-commerce companies to alleviate inventory cost burdens, leverage analytical data to project sales timeframes, and accelerate corporate growth by providing targeted purchase capital and historical sales data based upon the user's target market. This proprietary system, 8fig's online platform (the "Platform"), takes information submitted by various e-commerce merchants such as inventory costs, inventory volume,

historical sales data, cash flow, projected sales trends, and other merchant-provided information, compares this information with its database of other available information, and formulates a projection of the merchant's inventory purchase needs, a schedule for inventory acquisition and sales, and expected sales revenue expectations.

14.     This projection, called the "Growth Plan," provides a data-driven roadmap so the e-commerce merchant can more accurately project inventory needs and sales expectations, avoiding over-expending capital to acquire inventory and avoiding expensive storage costs by more accurately projecting inventory movement timelines. In short, the Growth Plan and 8fig's Platform allow the e-commerce merchant to grow its business in a controlled and predictable fashion, and provides financial viability during the infancy of the business or during a period of business growth.

15.     Utilizing this Growth Plan and considering the e-commerce merchant's inventory and capital needs, 8fig makes an offer to purchase a set amount of the projected revenue from the e-commerce merchant in exchange for an up-front purchase price. These offers (each, an "Offer") are made in reference to a particular line of inventory, i.e. a specific product (each, a "Line"). Further, as the e-commerce merchant expands its business, additional Lines can be added and incorporated into the Growth Plan using 8fig's Platform so the e-commerce merchant grows predictably, responsibly, and with less risk of over-extending its capital stream. Each Offer made for a Line by 8fig contains a "participation" element for the merchant that constitutes a portion of the inventory cost that the merchant will contribute to purchase the necessary inventory, thereby ensuring both the merchant and 8fig are active participants in the inventory acquisition. Further, because 8fig purchases a portion of the projected revenue generated by the Line, the e-commerce merchant is only responsible for remitting the revenue sold if and when the merchant generates revenue. In short, both 8fig and the e-commerce merchant are vested in the responsible growth of the e-commerce brand.

16.     When a merchant accepts an Offer for a particular Line, a projected timeline of purchase price advances needed to acquire inventory and remittances of the purchased portions of accounts receivable generated from sales of the Line is produced. 8fig utilizes this process to avoid advance of the entire purchase price, thereby limiting exposure and decreasing the risk factor in the transaction, and instead advances the purchase prices as the purchase price becomes needed (the "Remittance Schedule"). The Growth Plan and Line can be adjusted at any time should the merchant's financial circumstances change, such as inventory selling more quickly or more slowly than expected, resulting in the Remittance Schedule being adjusted to more closely follow the customer's needs at that time.   In short, the customer is provided flexibility that adjusts as the customer's business changes.

17.     Importantly, should the merchant's business falter through the *ordinary course of business*, there is no absolute obligation to remit 8fig's portion of the purchased receivables because remittance is contingent upon the sale of inventory. This is important to the merchants, who are often start-up businesses or those desiring to expand their portfolio because 8fig's recovery of its purchased receivables is wholly dependent upon the e-commerce merchant's success. 8fig, therefore, relies upon the e-commerce merchant's truthful representations and good faith performance of its business, moving alongside the e-commerce merchant as a growth partner.

18.     The arrangement with 8fig allows merchants the ability to obtain access to additional capital they otherwise could not, and, unlike a loan which requires absolute repayment or an investment which requires giving up equity, the remittance to 8fig is only made if inventory successfully sells. Working with 8fig also affords the merchants technology-backed support through predictive sales analysis that allows the merchant to plan more accurately for sales timelines, not incur costs from storage of excessive inventory, and create responsible, long-term consumer targeted

growth in partnership with 8fig.

19.     Consumers likewise benefit because competition in the marketplace is further expanded by causing more marketplace entrants that would otherwise lack the capital means necessary to compete.

20.     8fig utilizes viewing-only access of each merchant's bank account and e-commerce platform to monitor sales data, receipt of accounts receivable, and business performance to more closely assist the merchants with their Growth Plans. In a tangible way, 8fig stands with and actively assists the merchants so that they can be successful and continue growing their businesses.

21.     8fig's business and technology predominantly operates through its principal office in Austin, Texas, where it manages the Platform, creates and operates the Growth Plan(s), and undertakes work relating to the created Line(s).

***The Master Future Revenue Purchase Agreement***

22.     8fig's relationship with a merchant is governed by a Master Future Revenue Purchase Agreement (the "Agreement"), which sets forth the terms and conditions of the parties' relationship while providing simple, plain English explanations of 8fig's business systems. Under the Agreement, the merchant is authorized to utilize the Platform to submit information for a Growth Plan. The merchant agrees that it will (1) only utilize one bank account (the "Bank Account") which will be linked to 8fig's system for view-only access to deposit accounts receivable and manage a specific Line, thereby ensuring the most accurate projections, and (2) sells and assigns all of its rights, title, and interest in and to the accounts receivable generated from a particular Line to 8fig, up to the amount purchased under the Line, in exchange for the up-front purchase price. The Remittance Schedule even provides the e-commerce merchant with its projected profit from each line so that the merchant can plan out strategic growth. 8fig's model is designed to clarify the

relationship and ensure both sides remain collaborative in seeking the merchant's continued growth.

23.     To secure its purchase and place the public on notice of 8fig's ownership interest in the collateral, the Agreement grants a security interest in the accounts receivable and proceeds therefrom for the inventory covered by the Line and an interest in the underlying inventory itself. This is designed as a necessary protection for the services 8fig performs to help the merchants become successful in ongoing Lines in the market. To place the public on notice of 8fig's ownership of the purchased accounts receivable, 8fig is also authorized to file a UCC-1 Financing Statement.

***Hardbody's Wrongful Acts***

24.     Hardbody is an online merchant in the business of selling merchandise exclusively through e-commerce websites like Amazon, Shopify, Wal-Mart, and other like platforms, including its own website. Hardbody is a limited liability company that formed on October 10, 2016.

25.     Upon information and belief, Hardbody's membership is comprised of Lawrence Payne, Patricia Payne, Nathan Barns, Darren Kilpatrick, Susannah Kilpatrick, Brett Malinoski, and Curtis Rise[1] (collectively, "Hardbody's Members"), and Lawrence Payne and Patricia Payne (collectively, the "Paynes") manage the day-to-day operations and finances for Hardbody.

26.     According to a Federal Complaint filed by Nathan Barns, Susannah Kilpatrick, and Darren Kilpatrick (collectively, the "Purported Members") on October 21, 2022 (the "Kansas Complaint") in *Nathan Barns, Susannah Kilpatrick, and Darren Kilpatrick v. Lawrence Payne and Patricia Payne* Case No. 2:22-cv-02433-HLT-KGG (the "Kansas Action"), against the Paynes, Hardbody began experiencing disputes among its members sometime in 2020. A true and correct copy of the Kansas Complaint is attached hereto and incorporated herein as Exhibit "C."[2] On May 17, 2022, Nathan Barns, Darren Kilpatrick, and Susannah Kilpatrick, through counsel, sent a written

---

[1] There is present litigation regarding the membership of Hardbody as explained in further detail below.
[2] Plaintiff requests the Court take judicial notice of the Kansas Complaint and the filings in the Kansas Action.

notice of a member meeting to Hardbody's Members (the "Notice").[3] In the notice, the Purported Members asserted that the Paynes misappropriated Hardbody's assets, breached their fiduciary duties, and subjected Hardbody to claims under the False Claims Act and Internal Revenue Code.[4] Further, the Notice threatened that the Purported Members would file a petition of dissolution for Hardbody, if necessary.[5]

27.     On July 14, 2022, the Paynes obtained an attorney regarding the Hardbody's Members' dispute.[6]

28.     Just one (1) week later, on or about July 21, 2022, Hardbody and 8fig executed the Agreement whereby 8fig agreed to grant Hardbody access to the Platform and to deposit the purchase price into Hardbody's specific merchant bank account as outlined in the Agreement (the "Bank Account"). Hardbody represented to 8fig that it only sold inventory on its WooCommerce website. Hardbody and its signatory, Patricia Payne, failed to apprise 8fig of Hardbody's Members' dispute and threatened dissolution of Hardbody itself, despite representing and warranting that it was not aware of any pending, threatened, or current litigation that could result in a material adverse change to Hardbody.

29.     In exchange for Hardbody being granted access to the Platform, Hardbody promised that, for each offer it accepts on the Platform, it will sell and assign to 8fig all right, title, and interest in the future receivables reflected in that offer (the "Receivables").

30.     Further, Hardbody agreed to deposit the Receivables into the same Bank Account that 8fig deposited the purchase price, as well as agreed to remit the Receivables from time to time as defined in the Platform's Remittance Schedule to 8fig via ACH. Pursuant to the Agreement, 8fig

---

[3] Exhibit A at pg. 11.
[4] Exhibit A at pgs. 16 – 20.
[5] Exhibit A at pgs. 11 – 12.
[6] Exhibit A at pg. 13.

was also granted a continuing security interest in the Receivables and all related inventory, which 8fig perfected by filing a UCC-1 Financing Statement in Kansas on February 13, 2023. A true and correct copy of 8fig's UCC-1 Financing Statement against Hardbody is attached hereto and incorporated herein as Exhibit "D." This UCC-1 put the public on notice of 8fig's interest in the Receivables.

31.     Pursuant to section 9 of the Agreement, Hardbody represented and warranted to 8fig that Hardbody had no reason to believe Hardbody would cease operations in the next year and that Hardbody was unaware of any pending, threatened, or current litigation. In light of Hardbody's Members' dispute and the notices sent to Hardbody threatening dissolution and a lawsuit, this was materially false.

32.     After executing the Agreement, Hardbody submitted a Growth Plan on the Platform as well as one or more Lines. 8fig evaluated the Growth Plan and Lines, and purchased a certain amount of future account receivables. Over time, 8fig purchased, in total, $3,601,486.00 of Hardbody' future receivables (the "Purchased Receivables").

33.     On October 21, 2022, the Kansas Action was initiated a lawsuit against the Paynes for breach of contract, fraud and fraudulent inducement, breach of fiduciary duty, unjust enrichment, conversion, and an order of dissolution and accounting for Hardbody (the "Lawsuit").

34.     Hardbody defaulted under the Agreement under Section 10(5) and (6). Upon information and belief, Hardbody did not use the funds remitted by 8fig to purchase inventory to sell on its WooCommerce website. Hardbody advertises that it sells its product at Target, Walmart, and Amazon, despite not disclosing these storefronts or sales to 8fig. Upon information and belief, Hardbody used the Purchased Amount to purchase inventory to sell at Target, Walmart, and Amazon through a different entity, thereby committing further acts of default under the Agreement, or otherwise used the purchase price for non-authorized purposes.

35.     Hardbody further defaulted under the Agreement because Hardbody committed a default under Section 10(10) by providing false or misleading information about Hardbody's business or future revenue that was material to 8fig's decision to purchase the Purchased Receivables. Hardbody knew of the Members' dispute and threatened dissolution of Hardbody, but Hardbody failed to disclose such dispute before executing the Agreement with 8fig.

36.     After the allowance of all just and lawful offsets, remittances received by 8fig, and credits to Hardbody's account as to the Agreement and pursuant to Section 13 of the Agreement, a balance thereon of $2,646,513.03 remains due, unremitted, and owing.

## IV. CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT (HARDBODY)

37.     8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

38.     Hardbody defaulted under the terms of the Agreement by providing false or misleading information about Hardbody's business or future revenue that was material to 8fig's decision to purchase the Purchased Receivables and by not using the funds provided by 8fig to purchase inventory for Hardbody's WooCommerce website.   Specifically, Hardbody breached Sections 10(1) and 10(10) of the Agreement. Consequently, and pursuant to the respective terms of the Agreement, 8fig now seeks the remaining Purchased receivables via money damages as well as other amounts as allowed by law.

39.     After the allowance of all just and lawful offsets, payments, and credits to Hardbody's account a balance of $2,646,513.03 unremitted.

40.     All conditions precedent to 8fig's recovery have been performed, waived, or otherwise satisfied.

## COUNT 2: MONEY HAD AND RECEIVED (ALL DEFENDANTS)

41.    8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

42.    Hardbody holds money that, in equity and good conscience, belongs to the Plaintiff.

43.    In particular, 8fig purchased $2,646,513.03 of Hardbody's future receivables. Despite 8fig's purchase and Hardbody's sale of inventory associated with 8fig's purchase, Defendants failed to remit the purchase price to Hardbody. Further 8fig provided $3,601,486.00 via Purchase Price

44.    Upon information and belief, Defendants, acting in concert, moved these funds to another account, whether business or personal, preventing 8fig from recovering the funds.

45.    Defendants' retention of these funds is wholly without just excuse and has caused 8fig to suffer damages.

46.    Therefore, Plaintiff seeks recovery of $2,646,513.03 plus pre-judgment interest as provided by law, costs, attorney's fees, and post-judgment interest.

## COUNT 3: CONVERSION (ALL DEFENDANTS)

47.    8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

48.    Defendants converted the accounts receivable and proceeds therefrom traceable to the specific Lines under the Agreement. Defendants opened new storefronts on different platforms, in direct violation of the Agreement, and are actively utilizing those storefronts to sell the inventory acquired using Plaintiff's Purchase Price under the Lines, generating accounts receivable owned by 8fig, and converting the proceeds therefrom for their own benefit.

49.    As a result, Plaintiff has suffered direct, pecuniary harm in an amount within the

jurisdictional limits of this Court up to $2,646,513.03 plus pre-judgment interest as provided by law, costs, attorney's fees, and post-judgment interest.

## COUNT 4: CIVIL CONSPIRACY (ALL DEFENDANTS)

50.     8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

51.     All of the named Defendants were members of a combination of two or more persons.

52.     The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means.

53.     Here, the Defendants conspired to separate 8fig from the accounts receivable owed to it under the Agreement and to instead funnel those funds away from the Bank Account.

54.     Said Defendants had a meeting of the minds on the object or course of action.

55.     The Defendants committed unlawful, overt acts to further the object or course of action; including conversion.

56.     8fig accordingly seeks judgment against all Defendants in the amount to be determined by the finder of fact.

57.     By engaging in the aforementioned conduct, the Defendants have acted with malice in their unlawful acts. 8fig is therefore entitled to an award of punitive damages against the Defendants in an amount to be established at trial.

## COUNT FIVE: FRAUD (HARDBODY AND PATRICIA PAYNE)

58.     8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

59.     Hardbody and Patricia Payne represented and warranted to 8fig that they were not aware of any pending, threatened, or current litigation that could reasonably be expected to result in

a material adverse change in Hardbody's financial condition when the Agreement was executed on July 21, 2022.

60.     However, as shown by the Complaint, on May 17, 2022, approximately two months before Hardbody and 8fig entered into the Agreement, Defendants received a letter threatening to file a petition for the dissolution of Hardbody. In response to this letter, Defendants hired an attorney, a week before executing the Agreement.

61.     Accordingly, Patricia Payne and Hardbody made a material misrepresentation to 8fig to induce 8fig to enter into the Agreement, Growth Plans, and Lines.

62.     The representations made in the Agreement were a material term of the Agreement, and without such representations, 8fig would not have agreed to sign the Agreement or create the Growth Plan or Lines.

63.     Despite their material representations to 8fig, Hardbody and Patricia Payne were sued three months later, and now face judicial dissolution. If Hardbody is judicially dissolved, 8fig will be deprived of its right to receive account receivables from certain sales of Hardbody's inventory

64.     Patricia Payne worked for Hardbody when Hardbody made the representations to 8fig, and Patricia Payne was in a senior management position as the Chief Executive Officer.

65.     Accordingly, Patricia Payne knew that Hardbody's representations were false and that Hardbody was aware of threatened litigation that would result in a material adverse change to Hardbody's financial condition.

66.     Accordingly, Patricia Payne and Hardbody defrauded 8fig into purchasing account receivables from Hardbody that Patricia Payne and Hardbody knew it would not be able to generate due to litigation

67.     Patricia Payne and Hardbody's fraud has proximately caused damages to 8fig in the

amount of $2,646,513.03 and 8fig seeks exemplary damages for Patricia Payne and Hardbody's egregious acts.

68.     Patricia Payne and Hardbody actions and representation were fraudulent, malicious, and made with gross negligence, entitling 8fig to exemplary damages under Texas Civil Practice & Remedies Code § 41.003.

## V. ATTORNEY'S FEES

69.     8fig incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here, verbatim.

70.     Upon Defendants' failure to pay the balance owing on the Agreement, 8fig placed said contract in the hands of the undersigned attorney for enforcement and has agreed to pay said attorney reasonable attorney's fees for their services.

71.     Per the terms of the Agreement and by virtue of Article 38.001 *et seq.* of the Texas Civil Practice and Remedies Code, Defendants are liable to 8fig for the sum of all reasonable attorney fees expended.

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated herein, 8fig respectfully requests that Defendants be cited to appear and answer herein; 8fig have judgment against Defendants, jointly and severally, in the sum of $2,646,513.03; 8fig have judgment against Defendants, for all reasonable and necessary attorney's fees, pre-judgment interest at the statutory rate accruing from the date of default, through the date of judgment, post-judgment interest as provided by law, Court costs, and any other relief to which 8fig may be entitled at law or in equity.

Respectfully submitted,

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
(817) 338-1616 – Telephone
(817) 338-1610 - Facsimile

/s/ *Brandon J. Gibbons*
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com Brandon
J. Gibbons
State Bar I.D. #24082516
bgibbons@padfieldstout.com
E. Grace Bregard
gbregard@padfieldstout.com
State Bar I.D. #24125587
Jessica N. Alt
State Bar I.D. #24127981
jalt@padfieldstout.com
*Attorneys for Plaintiff*