.8fig

23875 Ventura Blvd, Calabasas, CA 91302

## MASTER FUTURE REVENUE PURCHASE AGREEMENT

This Master Future Revenue Purchase Agreement (the "Agreement"), dated as of ___07 / 21 / 2022___, is between 8fig Inc., a Delaware corporation with its registered address at 23875 Ventura Blvd, Calabasas, CA 91302 ("Purchaser," "We," "Our," or "Us") and the company that operates an e-commerce store or stores whose name, address, and other information is set forth below ("Merchant," "You," or "Your").

| | |
|---|---|
| Merchant Legal Name | Hardbody Supplements |
| State of Formation | kansas |
| Name of E-Commerce Store | Hardbody Supplements |
| Platform (e.g., Amazon, Shopify, eBay, Walmart) | Shopify |
| Physical Address | 16121 earnshaw st. |
| Mailing Address | 16121 earnshaw st. |
| Phone Number | ███████████ |
| E-mail Address | info@hardbodynutritional.com |
| Bank Account (Bank and Account Number) | ███████████ ███████████ |

**THIS AGREEMENT INCLUDES AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. PLEASE READ IT CAREFULLY.**

8fig provides inventory financing for online merchants through its Internet portal located at app.8fig.co (the "Platform"). This Agreement sets forth the terms and conditions that apply to each financing provided to You by Us.

In order to apply for financing from Us, You must create and submit on the Platform a "Growth Plan" made up of "Lines" that set forth the expenses associated with selling each batch of Your product(s), including inventory costs, freight, logistics, and marketing; when those costs are expected to be incurred; and projections for when You expect to receive the inventory and how long it will take to sell it. We will then evaluate your Growth Plan and determine in our sole discretion whether or not to offer financing. We are under no obligation to confirm the accuracy of the information You provide in Your

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

Growth Plan. If We elect to offer financing to You, we will provide a written offer ("Offer") through the Platform and by electronic mail.

The financing We provide to merchants is not a loan. Instead, We purchase a set amount of the revenue You receive from Your future sales of the inventory We finance (the "Amount Sold"). The amount We pay You for the Amount Sold is the "Purchase Price." By accepting each Offer from Us, You agree to sell and assign to us the Amount Sold, and to remit the Amount Sold to us on the schedule set forth in our Offer and the "Remittance Schedule" shown through Your account on the Platform, as it may be adjusted from time to time.

The Remittance Schedule is designed to schedule Our payment(s) to You of the Purchase Price when You need to pay the costs detailed in the Growth Plan, and to schedule Your remittances of the Amount Sold when You receive revenue from inventory sales. It shows when We will remit to You installments of the Purchase Price and when You will remit to Us installments of the Amount Sold. The Remittance Schedule is based in part on the projections and information You supplied to Us in the Growth Plan, and it is subject to change if those projections and information prove to be incorrect. For example, if shipment of a batch of inventory is delayed, or if it simply takes longer than expected to sell the inventory, You are required to amend and update the Growth Plan on the Platform to provide updated projections and information. We will then evaluate the amended Growth Plan. If Your adjustments to the Growth Plan only impact the timing and/or amount of Your future remittances to Us, then We will update the Remittance Schedule and the Amount Sold will not change, provided that You have not breached this Agreement. If Your adjustments to the Growth Plan impact the amount or timing of Our disbursements to You and/or the Purchase Price, then We may or may not agree to update the Remittance Schedule based on the new information. In circumstances where we approve an adjustment that increases the Purchase Price, the Amount Sold will also increase accordingly..

You are only required to remit the Amount Sold to Us when (and if) You sell the inventory we financed. If you go out of business in the ordinary course or file for bankruptcy before remitting the entire Amount Sold to Us, You will not be required to pay the balance of the Amount Sold. Similarly, if inventory sales are slower than originally projected, You will not have to pay more to Us because we do not charge interest. However, you are prohibited from engaging in certain activities ("Bad Acts") as defined in more detail below. Bad Acts unfairly prevent Us from receiving what We paid

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

for. For example, it is a Bad Act to misrepresent the revenue You receive from inventory sales or to close your e-commerce store and soon thereafter open a similar e-commerce store selling the same inventory. If You commit a Bad Act, You will have to pay us the remaining balance of the Amount Sold and other amounts due to Us under this Agreement.

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

## Detailed Terms and Conditions

### PURCHASE AND SALE OF FUTURE REVENUE

1.  **Sale and Assignment of Future Revenue**. By accepting an Offer from Us, You will sell and assign to Us all right, title, and interest in the Amount Sold shown in the Offer in exchange for the Purchase Price shown in the Offer. The Amount Sold is Our property, and You agree to hold it in trust for Us as You receive it from sales of the inventory We finance.

2.  **Payment of Purchase Price**. After you accept an Offer from Us, we will disburse the Purchase Price to you via Automatic Clearing House ("ACH") credits to your Bank Account (as defined below). We will disburse the Purchase Price in the installments shown in the Remittance Schedule, as amended from time to time. In the unlikely circumstance where ACH is not available for the disbursement, We reserve the right to disburse the Purchase Price through an alternative method that is acceptable to both You and Us.

3.  **Conditions to Disbursing Purchase Price on Additional Lines**. When a Growth Plan includes multiple Lines, We are only obligated to disburse the Purchase Price for the first Line. Our disbursement of the Purchase Price for additional Lines is conditioned upon our evaluation of the performance of prior Lines, such that we may elect not to disburse the portion of the Purchase Price related to additional Lines. In these circumstances, We will provide you with an amended Growth Plan and Remittance Schedule showing, among other things, that the Amount Sold has been reduced based on the reduction of the Purchase Price.

### REMITTANCE PROCESS

4.  **Merchant Bank Account**. You certify that the Bank Account identified on the first page of this Agreement is a checking account in good standing held by You; that You are authorized to withdraw funds from the Bank Account; and that You have designated the Bank Account to be used for Your participation in this Agreement. You agree to deposit into the Bank Account all revenue You receive from selling the inventory We finance. You agree to provide Us with online viewing access to the Bank Account by supplying login and other information We request, and to provide Us with updated login information immediately if it is

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

changed. You agree not to change, close, or terminate the Bank Account without Our prior express written consent. If the Bank Account is closed or suspended for any reason, and You are not able to resolve the issue with Your bank within five days of the closure or suspension, You agree to obtain a replacement Bank Account and provide us with the replacement Bank Account information We need to debit the account and view account activity within fifteen days after the closure or suspension of the Bank Account. If You replace the Bank Account with a new account in accordance with this provision, the replacement account shall become the Bank Account under this Agreement.

5.  **Remittances.** In order to remit the Amount Sold to Us, You hereby authorize Us to debit via ACH directly from the Bank Account each remittance due under Your Remittance Schedule, as amended from time to time. This authorization shall remain in place until the entire Amount Sold and all other amounts due under this Agreement have been remitted to Us.

6.  **Aggregation of Lines; Single Remittance Schedule**. When You apply for additional financing from Us by amending the Growth Plan to add additional Lines, and we decide to make an Offer for the new Lines, our Offer will include an updated Remittance Schedule that covers Your and Our obligations regarding both existing and new Lines. For example, if we owe You Purchase Price payments of $5,000 and $10,000 on July 1 for Lines covered by two different Offers, We will deposit to the Bank Account a single payment of $15,000 on July 1. Similarly, if You are scheduled to remit on July 1 $2,000 of the Amount Sold from one Offer, and $3,000 of the Amount Sold from another Offer, We will debit $5,000 from the Bank Account on July 1. You agree that We are not required to determine what portion of the revenue You deposited to the Bank Account came from sales of inventory from any particular Line, and instead may treat all Lines as consolidated and aggregated for remittance purposes.

7.  **Remittance Schedule Adjustments**. The Remittance Schedule is designed to schedule remittances of the Amount Sold when You sell the inventory We financed. You acknowledge that the projections and information You provide in the Growth Plan may change over time, such as when inventory shipments are delayed or sales of the inventory are made faster or slower than You originally projected. In order to ensure that remittances of the Amount Sold align with the

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

timing of Your future inventory sales, You agree to update the Growth Plan whenever there are material variations from the information and projections You previously provided. We will then update the Remittance Schedule so that We do not debit the Bank Account before You have received the revenue We purchased from You. However, You are solely responsible for ensuring that the submitted Growth Plan and the resulting Remittance Schedule are accurate. It is Your obligation to review and approve the Remittance Schedule, and We are not liable for any costs or losses due to Our debiting your Bank Account based on the new Remittance Schedule. We are under no obligation to proactively monitor Your sales or future revenue or any other event that may affect the Growth Plan or Remittance Schedule. The Growth Plan can be adjusted using the dashboard on the Platform. There is no limit on the number of times You may amend the Growth Plan, provided that you do so accurately and in good faith. Improper amendments to the Growth Plan may constitute a "Bad Act" as provided below.

8. **Seller Account Access.** In order to allow Us to monitor your inventory sales and verify information You provide to Us, You agree to provide Us with online viewing access, including login credentials, to Your seller account(s) on the selling platform(s) where You conduct Your business. You further agree to provide Us immediately with updated login credentials or other information We request if Your login credentials are changed or if We are not able to access Your seller account for any reason.

**REPRESENTATIONS, WARRANTIES, AND EVENTS OF DEFAULT**

9. **Merchant Representations, Warranties, and Covenants**. Merchant represents and warrants to Purchaser, and agrees to, the following:

    1. Merchant has provided and will provide Purchaser with true and complete information and copies of all documentation reasonably requested by Purchaser in its sole discretion;

    2. Merchant will not revoke or interfere with Purchaser's access to Merchant's seller account(s) on its selling platform(s) or Purchaser's access to view activity in the Bank Account;

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

3. Merchant represents and warrants that it is the legal owner of the future revenue being sold to Purchaser, and that the Amount Sold is not subject to any liens, encumbrances, or claims of any other person or entity;

4. Merchant has not entered into any agreements or made any offers to any person or entity to sell, transfer, or otherwise encumber the Amount Sold; or to sell, transfer, or otherwise encumber all, or substantially all, of Merchant's assets;

5. The fair market value of Merchant's assets exceeds the fair market value of Merchant's liabilities;

6. Merchant is meeting current liabilities as they mature;

7. Execution of this Agreement and participation in this program does not constitute a breach of Merchant's obligations to any other person or entity;

8. Merchant will not seek any additional funding that would encumber the Amount Sold without Purchaser's prior written approval;

9. Merchant acknowledges and understands that taking additional funding from a seller platform significantly undermines the likelihood that the Amount Sold will be remitted, and, for that reason, Merchant agrees that, if Merchant takes additional funding from a seller platform, Merchant will pay Purchaser a fee of $500 in additional to all other amounts due as a result of taking such funding;

10. Merchant is operating its e-commerce store(s) in compliance with its third party obligations including to Merchant customers and/or any e-commerce platform;

11. Merchant is a duly formed corporation, validly existing and in good standing under the laws of its state of formation and is duly qualified to do business in every jurisdiction where the nature of the business requires it to be so qualified;

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

12.     Merchant is not subject to any bankruptcy proceeding or other insolvency event and is not aware of any third party considering an involuntary bankruptcy proceeding against Merchant;

13.     Merchant does not have reason to believe that Merchant's business will cease operations within the next year and has not considered or discussed with anyone the possibility of filing a bankruptcy petition;

14.     Merchant is not aware of any pending, threatened, or current litigation, arbitration, regulatory enforcement action or investigation, writ, or restraining order affecting Merchant or any of its affiliates, which could reasonably be expected to result in a material adverse change in Merchant's financial condition;

15.     Merchant will not use any portion of the Purchase Price for personal, consumer, family, or household purposes;

16.     Merchant will only use the Purchase Price exactly as agreed to and described in the Growth Plan;

17.     Merchant has the necessary rights and authorizations to sell its goods, and Merchant does not, and will not, infringe upon, violate, or misappropriate any intellectual property rights of any third party; and

18.     Merchant will comply, at all times, with any and all applicable laws and regulations related to its e-commerce store including, without limitation, any data protection obligations;

19.     Merchant will comply, at all times, with any and all applicable U.S. export laws and regulations, as well as any additional export laws applicable in any jurisdiction in which a customer operates. Merchant specifically agrees not to re-export, resell, or otherwise dispose of technology or goods to any prohibited country in violation of any applicable export laws.

10.     **Bad Acts**. If you commit any of the following Bad Acts without our prior written consent before we receive the Amount Sold, you will be in default:

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

1.      You sell, transfer, or otherwise encumber, or attempt to sell, transfer, or otherwise encumber, the Amount Sold to another finance company or any other person or entity;

2.      You seek additional funding that encumbers the Amount Sold without Purchaser's prior written approval;

3.      You encumber or allow any encumbrance to attach to our interest in the Amount Sold;

4.      You sell all or substantially all of your assets used in the operation of your e-commerce store(s) to a third party;

5.      You do not use the Purchase Price exactly as agreed to and described in the Growth Plan;

6.      You materially change the nature and operation of your business from what was represented to Us when you applied for financing from Us without Our express written consent;

7.      You change your legal name or jurisdiction of formation, or conduct business affecting the Amount Sold through a different business entity or e-commerce store without Our express written consent;

8.      You change, close, or terminate the Bank Account without Our express written consent;

9.      You do not obtain a replacement Bank Account and provide replacement Bank Account information within fifteen days after your bank closes or suspends the Bank Account;

10.     You provide us with false or misleading information about your business or future revenue (in your application or otherwise) that is material to our decision to purchase the Amount Sold from you;

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

11. You deposit revenue from Lines into any account other than the Bank Account;

12. You revoke Purchaser's access to Your seller account(s) on any selling platform as required under Section 8, or Purchaser's access to view transactions in the Bank Account;

13. You violate any state or federal law, including, but not limited to, the intellectual property laws and export laws as provided in Section 9.19; and

14. You attempt to update the Growth Plan using information that you know to be false, inaccurate, or otherwise improper.

15. Notwithstanding any of the foregoing, We will not consider any of these acts to be Bad Acts if they occur because You go out of business in the ordinary course or You are unable to sell enough of the inventory We financed to be able to deliver the entire Amount Sold. These Bad Acts are prohibited solely to protect Our ability to collect the Amount Sold and receive the benefit of Our bargain. They do not create any obligation for Merchant to deliver revenue to Purchaser if the revenue simply was not generated by Merchant's business;.

11. **Other Breaches**. If you commit an act that is not a Bad Act but that otherwise violates a term or covenant in this Agreement (an "Other Breach"), you will be in default.

### GOOD FAITH OPERATION OF MERCHANT'S BUSINESS

12. **Good Faith Operations**. You agree to operate Your business in good faith and to make commercially reasonable efforts to sell the inventory We financed and to collect the Amount Sold in accordance with applicable laws so it may be remitted to Us.

### REMEDIES

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

13. **Remedies for Bad Acts**. If Merchant commits any of the Bad Acts listed in Section 9 above, Purchaser may exercise any and all rights available to it under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code ("UCC"). If Merchant commits a Bad Act, Merchant is liable to Purchaser in an amount in cash equal to the portion of the Amount Sold that has not been remitted, along with any other amounts due under this Agreement and any additional amounts owed for committing an Other Breach. These amounts become immediately due and payable when Merchant commits a Bad Act. If You do not pay the amounts due, We have the right to withdraw the amounts from your Bank Account without notice; commence a suit in equity or action at law, or both; or to enforce Purchaser's rights as a secured party under the UCC. All rights and remedies available to Us are cumulative and not exclusive to any other remedies available to Us in law or equity, or under other sections of this Agreement.

14. **Remedies for Other Breaches**. If Merchant commits an Other Breach as described in Section 11 above, Merchant will be liable to Purchaser for all damages resulting from the Other Breach, including, but not limited to, Purchaser's reasonable attorneys' fees, expenses, and costs incurred in any proceeding pursued against you to recover the amounts due under this Agreement. If You do not pay the amounts due, We have the right to withdraw the amounts from your Bank Account; commence a suit in equity or action at law, or both; or enforce Purchaser's rights as a secured party under the UCC. All rights and remedies available to Us are cumulative and not exclusive to any other remedies available to Us in law or equity, or under other sections of this Agreement.

**COLLATERAL**

15. **Security Interest and Collateral Pledged**. You hereby grant us a continuing security interest (the "Security Interest"), which will remain in full force and effect until the Amount Sold has been reduced to zero and all other amounts due to Us under this Agreement have been remitted or paid. This Security Interest is granted in all of Your business's personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks,

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not We are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that You grant us is being given solely for the purpose of ensuring that you do not commit a "Bad Act" that deprives us of our bargained-for ability to collect the Amount Sold as it is generated in the ordinary course of Your business, as Your business was described to Us when We considered your application for financing.

16. **Financing Statements**. You authorize Us (or any designee, nominee, transferee or servicer) to file UCC-1 or comparable statements as We deem necessary or appropriate to provide notice of Our purchase of the Amount Sold under this Agreement, noting that the transaction is intended as a sale and not as security for a loan; and perfect the security interest granted by You to Us under this Agreement. You agree to promptly furnish upon our request written statements and schedules identifying and describing the Collateral in such detail as We may require.

## TERMINATION

17. **Termination**. We may terminate this Agreement at any time in our sole discretion by providing you with notice in writing.  You may terminate this Agreement at any time after we have received the entire Amount Sold and all other amounts due under this Agreement.

18. **Survival**.  All covenants, representations and warranties made herein shall continue in full force and effect until the Agreement is terminated as provided above; except for Sections 13, 14, 15, 16, 19, 20, 21, 22, 24, 26, 27, and 28, which will survive until one (1) year following the date in which the Amount Sold has been paid to Us.

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

## ADDITIONAL TERMS

19. **Merchant Indemnification**. Merchant agrees to indemnify, defend, and hold harmless Purchaser (together with its officers, directors, agents, representatives, shareholders, counsel, and employees (each, an "Indemnified Party")) from and against any and all claims, losses, and liabilities (including, without limitation, attorneys' fees) arising out of or resulting from: (i) any violation of Sections 8, 9, and 11; (ii) any Bad Act committed by Merchant; (iii) any other claim initiated by any third party in connection with any alleged act or failure to act by Merchant; and (iv) any taxes withheld or deducted from remittances under this Agreement.

20. **Governing Law**. This Agreement is governed by and construed exclusively in accordance with the laws of the State of Texas, without regard to any applicable principles of conflicts of law.

21. **Severability**. Except with respect to the Arbitration Agreement below, if any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein will not in any way be affected or impaired.

22. **Arbitration Agreement**. Unless prohibited by federal law, You and We agree to arbitrate any and all claims and disputes relating in any way to this Agreement or the parties' dealings with one another ("Claims"), except for Claims concerning the validity, scope or enforceability of this Arbitration Agreement, through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and not by state law.

In any claim or dispute to be resolved by arbitration, neither You nor We will be able to have a court or jury trial or participate in a class action or class arbitration. Other rights that You or We would have if you or we went to court will not be available or will be more limited in arbitration, including the right to appeal. You and We each understand and agree that by requiring each other to resolve all disputes through individual arbitration, WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND NOT

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

23875 Ventura Blvd, Calabasas, CA 91302

AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING. The arbitrator(s) may not consolidate the claims of multiple parties without the parties' express written consent.

Arbitrations shall be administered by the American Arbitration Association ("AAA") pursuant to the applicable AAA rules in effect at the time the arbitration is initiated. You may obtain information about arbitration, arbitration procedures and fees from AAA by calling 800-778-7879 or visiting www.adr.org. If AAA is unable or unwilling to arbitrate a dispute, then the dispute may be referred to any other arbitration organization or arbitrator the parties both agree upon in writing, or selected by a court pursuant to the FAA. The arbitrator's decision shall be final and binding. The parties agree that this Arbitration Agreement extends to any other parties involved in any Claims.

You and We each may exercise any lawful rights to seek provisional remedies or self-help, without waiving the right to arbitrate by doing so. Notwithstanding any other provision of this Agreement, if the foregoing class action waiver and prohibition against class arbitration is determined to be invalid or unenforceable, then this entire Arbitration Agreement shall be void. If a claim is brought seeking public injunctive relief and a court determines that the restrictions in the Arbitration Agreement prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such claim (and that determination becomes final after all appeals have been exhausted), the claim for public injunctive relief will be determined in court and any individual claims will be arbitrated. In such a case, the court shall stay the claim for public injunctive relief until the arbitration pertaining to individual relief has been entered in court. In no event will a claim for public injunctive relief be arbitrated. If any other portion of this Arbitration Agreement is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement. This Arbitration Agreement will survive the termination of this Agreement, Your fulfillment or default of Your obligations under this Agreement, and/or Your or Our bankruptcy or insolvency (to the extent permitted by applicable law).

**YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY.** If You do not wish to be bound by this agreement to arbitrate, You must notify Us in writing within sixty (60) days after the date You sign this Agreement. You must send your request by sending an e-mail to: service@8fig.co. The request must include your full name, address, account number, and the statement "I reject the 8fig Arbitration Agreement." If You exercise the right to

reject arbitration, the other terms of this Agreement shall remain in full force and effect as if You had not rejected arbitration.

23. **Contacting You**. You authorize Us and our affiliates, agents, representatives, assigns and service providers (collectively, the "Messaging Parties") to contact You using automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems in order to provide you with information relating to this Agreement and our dealings with one another, including without limitation information about remittances. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses You supply to the Messaging Parties in connection with this Agreement, your program participation, or any other matter. You understand that anyone with access to Your telephone or email account may listen to or read the messages the Messaging Parties leave or send You, and You agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when You receive a telephone call, text message or email, You may incur a charge from the company that provides You with telecommunications, wireless and/or Internet services, and You agree that the Messaging Parties will have no liability for such charges. You expressly authorize the Messaging Parties to monitor and record Your calls with the Messaging Parties. You understand that, at any time, You may withdraw your consent to receive text messages and automated calls to Your cell phone or to receive artificial or prerecorded voice message system calls by emailing Us at service@8fig.co, or writing to Us at: 11801 Domain Blvd, 3rd Floor, Austin, Texas 78758, United States. To stop text messages, You can also simply reply "STOP" to any text message the Messaging Parties send You. To stop emails, You can follow the opt-out instructions included at the bottom of the Messaging Parties' emails.

24. **Entire Agreement; Amendments**. This Agreement together with any exhibits and addenda, and Purchaser's Service Terms of Use (available at https://www.8fig.co/terms-of-use) and Privacy Policy (available at https://www.8fig.co/privacy-policy), represents the entire understanding between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings and agreements with respect to such subject matter. However, any

Case 1:24-cv-00007-DII   Document 1-1   Filed 01/03/24   Page 16 of 20

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

of Your outstanding obligations owing under any prior agreement and/or any grant by you of any security interest to Us under any prior agreement are not extinguished by this Agreement. No provision of this Agreement may be amended or waived except by a writing signed by the parties hereto. You acknowledge and agree that You have executed this Agreement without any reliance on any or statement, warranty or representation by Us or Our agents or representatives.

25. **Notices**. Unless otherwise provided herein, any notice, request or other communication which Purchaser or Merchant may be required, or may desire, to give to the other party under any provision of this Agreement will be in writing and sent by e-mail, hand delivery, courier or first-class mail, certified or registered and postage prepaid, and will be deemed to have been given or made when transmitted (i) if delivered by e-mail, after receipt of an electronic receipt from the recipient's e-mail system, (ii) if delivered by hand, after actual receipt, and (iii) if delivered by courier or certified or registered mail, after receipt of a delivery confirmation, and in each case addressed to Purchaser or Merchant as set forth below. Any party hereto may change the address to which all notices, requests and other communications are to be sent to it by giving written notice of such address change to the other parties in conformity with this paragraph, but such change will not be effective until notice of such change has been received by the other parties. Merchant agrees that Purchaser may presume the authenticity, genuineness, accuracy, completeness and due execution of any email or fax communication bearing a facsimile or scanned signature resembling a signature of an authorized person of Merchant without further verification or inquiry by Purchaser. Notwithstanding the foregoing, Purchaser in its sole discretion may elect not to act or rely upon such a communication and will be entitled (but not obligated) to make inquiries or require further action by Merchant to authenticate any such communication.

26. **Non-Disclosure Obligations**. You agree that you will not disclose the terms of this Agreement regarding the Amount Sold, the Purchase Price, or the ratio of those two amounts except to your counsel or tax advisors or as may be required by applicable law.

27. **Specific Performance**. You understand and agree that money damages would not be a sufficient remedy for any breach or threatened breach of this Agreement and

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

that We shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach to the extent permitted by law. In the event that such equitable relief is granted, such remedy or remedies shall not be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available to Us at law or equity.

28. **Assignment**. This Agreement shall bind and inure to the benefit of the respective successors and permitted assigns of each of the parties; provided, however, that You may not assign any of its rights or obligations hereunder without Our prior written consent, given or withheld in Our sole discretion.

**BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT, INCLUDING THE ARBITRATION CLAUSE IN SECTION 23 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT WITH COUNSEL OF YOUR CHOICE.**

By: ____*Patricia Payne*____   Patricia Payne   principle____

   Authorized Signature       Print Name        Title

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

## 8fig Electronic Fund Transfer Authorization

This 8fig Electronic Fund Transfer Authorization (the "Authorization") supplements the foregoing concurrent Master Future Revenue Purchase Agreement (the "Agreement"). Except as noted below, capitalized terms in the Authorization have the meaning set forth in the Agreement.

You irrevocably authorize Us (which includes for the purposes of this authorization, our agents, service providers, successors, and assigns) to take delivery of each remittance due under the Remittance Schedule, as amended from time to time, by initiating an electronic fund transfer via the Automated Clearing House network or similar network (an "ACH") from the business deposit account specified below, any substitute account You later specify, or any other account containing revenue from sales of the inventory We financed (collectively, the "Bank Account"). You authorize Us to initiate a single ACH for any combined amounts as permitted by the Agreement. You further authorize Us to initiate ACHs to the Account for any amounts that come due under the Agreement, including ACHs for an amount equal to the portion of the Amount Sold that has not been remitted in the event You commit a Bad Act. You also authorize Us to initiate ACH credits or debits to the Account to correct any errors We may make in processing a payment. In the event that an ACH is returned unpaid, You authorize us to reinitiate the ACH until it is paid (up to two times per ACH) and to initiate a separate ACH or to add to a reinitiated ACH the amount of any dishonored payment fee that We charge. You agree that You will not cancel this Authorization or instruct any depository holding revenue from Your inventory sales to reject our ACHs. You promise that the Bank Account specified below and any substitute Bank Account You provide Us is used solely for business purposes and not for personal, family or household purposes, and that You are an authorized signor on these Accounts.

Business Deposit Account Information

Account Number: ███████████   Routing/ABA No.: ███████████

Depository Name: HARDBODY COACHING,   Depository City/State: overland park/kansas

Type of Account:

✔ Business Checking __ Business Savings

__ Other Business Acct. (specify): _____

Doc ID: 9ecd65f572b86e75bf39696194798f0c2765bf86

.8fig

23875 Ventura Blvd, Calabasas, CA 91302

By signing below, you agree to the terms of this 8fig Electronic Fund Transfer Authorization.

MERCHANT NAME: Hardbody Supplements

By: _____*Patricia Payne*_____

Name:  Patricia  Payne

Title:  principle



# Audit Trail

| | |
|---|---|
| **TITLE** | 8fig agreement - Hardbody Supplements - HAFQ0WG95M |
| **FILE NAME** | 8fig_agreement_v2.pdf |
| **DOCUMENT ID** | 9ecd65f572b86e75bf39696194798f0c2765bf86 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

This document was signed on app.8fig.co

## Document History

**SENT** — 07 / 21 / 2022   17:59:53 UTC
Sent for signature to Patricia Payne (info@hardbodynutritional.com) from hellosign@8fig.co
IP: 34.209.177.18

**VIEWED** — 07 / 21 / 2022   17:59:57 UTC
Viewed by Patricia Payne (info@hardbodynutritional.com)
IP: 172.15.173.13

**SIGNED** — 07 / 21 / 2022   18:01:46 UTC
Signed by Patricia Payne (info@hardbodynutritional.com)
IP: 172.15.173.13

**COMPLETED** — 07 / 21 / 2022   18:01:46 UTC
The document has been completed.

Powered by HELLOSIGN